**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **ALEJANDRO GARCIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:25-cv-463 (MTT)** |
| | ) | |
| **CHEWY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ORDER**

Plaintiff Alejandro Garcia, proceeding pro se, asserts claims against his former employer, Defendant Chewy, Inc. ("Chewy") for retaliation, discrimination, failure to accommodate under the ADA, and wrongful termination. ECF 4 at 7–10. According to the amended complaint, Chewy hired Garcia in March 2021 to work as an IT service/desk analyst. *Id.* ¶ 10. Garcia requested ADA accommodations on October 18, 2023, but some managers dismissed his concerns, and eventually, Chewy terminated his employment. *Id.* ¶¶ 14, 19, 23–27. Chewy moves to compel arbitration and stay the case. ECF 16. Because the undisputed facts show that a valid arbitration agreement exists and that the parties delegated threshold questions of applicability to the arbitrator, the motion (ECF 16) is **GRANTED**, and the case is **STAYED** pending resolution of the arbitral proceedings.

## I. BACKGROUND[1]

On June 7, 2023, Garcia applied for an internal employment opportunity with Chewy. ECF 16-2 at 4; 22-1 ¶ 4. As a condition of submitting his application, Garcia executed Chewy's mutual Arbitration Agreement. *Id*.; ECF 16-2 at 7–12. Garcia states that he does not recall the process of executing the Arbitration Agreement. ECF 22-1 ¶¶ 4–6. But he received a confirmation email from Chewy, stating that "**[a]s part of your application process, you completed Chewy's Dispute Resolution Agreement, a copy of which is attached for your records.**"[2] ECF 22-2 at 3 (emphasis in original). The Arbitration Agreement bears Garcia's electronic signature and contains a date, time, and IP address. ECF 16-2 at 12. It states, "[e]xcept as otherwise provided in this Agreement, this Agreement applies to any dispute, past, present, or future, that the Company may have against you or that you may have against [it]." ECF 16-2 at 7. It also contains a delegation clause, stating:

> [E]xcept as this Agreement otherwise provides, the Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, as stated in the "Class and Collective Action Waivers" section below, the preceding sentence does not apply to the Class Action Waiver and/or Collective Action Waiver.

*Id.* at 8.

The signature of the parties is below the following statement:

> **By typing your name below, you are (a) acknowledging that you personally received and reviewed this Dispute Resolution Agreement; (b) accepting the terms and conditions of the Dispute Resolution**

[1] Unless otherwise stated, the following facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] Garcia states that the Arbitration Agreement attached to the confirmation email is the same document Chewy produced in support of the motion to compel arbitration. ECF 22-2 at 2.

> **Agreement, above; and (c) agreeing that your typed name is your electronic signature and to use an electronic signature to accept the Dispute Resolution Agreement. Your electronic signature is as legally binding as an ink signature.**

*Id.* at 12 (emphasis in original).

## II. STANDARD

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the [Federal Arbitration Act ("FAA")] compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The party seeking to compel arbitration has the initial burden of demonstrating that a valid arbitration agreement exists and that the dispute in question falls within its scope. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016) (explaining that under Georgia law, "[t]he party asserting the existence of a contract has the burden of proving its existence and its terms" (citation modified)). As relevant here, "the parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017). Thus, "'the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.'" *Id.* (emphasis in original) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

In analyzing whether an agreement to arbitrate exists, the Eleventh Circuit has instructed district courts to employ a "summary judgment-like standard"; in doing so, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Bazemore*, 827 F.3d at 1333 (citation

modified); *see also Reiterman v. Abid*, 26 F.4th 1226, 1233 (11th Cir. 2022) ("[T]he FAA expressly provides that district courts may consider evidence when determining whether an arbitration agreement exists."). "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party [opposing arbitration] . . . the court shall hear and determine such issue." 9 U.S.C. § 4. Under Federal Rule of Civil Procedure 56, summary judgment can be granted only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute cannot be said to be "genuine" where "it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative." *Bazemore*, 827 F.3d at 1333 (citation modified). Moreover, "'conclusory allegations without specific supporting facts have no probative value' for a party resisting summary judgment." *Id.* (quoting *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)).

## III. DISCUSSION

State law governs whether an enforceable contract or agreement to arbitrate exists. *Bazemore,* 827 F.3d at 1329; *Mason v. Midland Funding LLC*, 815 F. App'x 320, 324 (11th Cir. 2020). The amended complaint alleges federal question jurisdiction, so the Court applies "the choice-of-law principles of the federal common law, which follows the approach of the Restatement (Second) of Conflict of Laws." *Chau Kieu Nguyen v. JP Morgan Chase Bank, NA*, 709 F.3d 1342, 1345 (11th Cir. 2013) (citation modified) (citing *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir. 1980)); *see Lichtman v. Bar Educ., Inc.*, 2021 WL 4478249, at *3 (M.D. Fla.

Sept. 30, 2021) (applying federal common law choice-of-law rules to determine which state's contract law governs formation of an arbitration agreement in a case arising under federal question jurisdiction). The Court will apply the law of the state which "with respect to [the formation of the contract], has the most significant relationship to the transaction and the parties."[3] Restatement (Second) of Conflict of Laws § 188(1)–(2) (1971). Garcia is a resident of Georgia, worked remotely for Chewy in Georgia, and, as best the Court can tell, Garcia resided in Georgia when he pursued the internal employment opportunity with Chewy in June 2023. ECF 4 ¶¶ 4, 7, 10. Chewy is headquartered in Florida and seeks to enforce the Arbitration Agreement against a Georgia citizen. ECF 16-2 at 3–4. The Court thus concludes Georgia has the most significant relationship to the transaction and the parties and will apply Georgia contract law.

### A. Mutual Assent to Arbitrate

Under Georgia law, the existence and terms of a contract must be proven by a preponderance of the evidence. *Wallace v. Triad Sys. Fin. Corp.*, 212 Ga. App. 665, 666, 442 S.E.2d 476, 478 (1994). "The party asserting the existence of a contract has the burden of proving its existence and its terms." *Jackson v. Easters*, 190 Ga. App. 713, 714, 379 S.E.2d 610, 611 (1989); *see Yates v. CACV of Colo.*, 303 Ga. App. 425, 430, 693 S.E.2d 629, 634 (2010) ("As the party seeking to enforce the alleged arbitration agreement, CACV bore the burden of proving the existence of such a valid

[3] Chewy analyzes contract formation under Georgia law in its opening memorandum supporting the motion to compel. ECF 16-1 at 7–9. But in a footnote, Chewy states that it does not concede that Georgia law applies and states that Florida law might apply under federal common law choice-of-law principles because of the significant relationship the Arbitration Agreement has to Florida when compared to Georgia. *Id.* at 7–8 n.2. Chewy does not explain why it believes the Arbitration Agreement has a more significant relationship to Florida than Georgia. *Id.* Chewy analyzes the motion under Georgia law because that is where Garcia is a citizen and because "the states' contract laws are nearly identical." *Id.*

and enforceable agreement."). "To constitute a valid contract," Georgia law requires: (1) parties able to contract; (2) consideration; (3) assent by the parties to the terms of the contract; and (4) a subject matter upon which the contract can operate. O.C.G.A. § 13-3-1. Garcia and Chewy were able to contract, and consideration was made by both parties because they each agreed to submit claims through the Arbitration Agreement's dispute resolution procedures. ECF 16-2 at 7–12. There was also a subject matter upon which the contract can operate—an alternative dispute resolution process. But Garcia challenges assent. ECF 22.

Importantly, Garcia does not challenge assent by disputing that he agreed to the Arbitration Agreement. *Id.* Garcia states he does not recall the process for signing the Arbitration Agreement,[4] but he does not dispute that the Arbitration Agreement bearing his signature was "generated" after he applied for an internal job opportunity. *Id.* at 1; 22-1 ¶¶ 4–6. Indeed, he submits a copy of the confirmation email confirming that he completed the Arbitration Agreement during the internal job application process. ECF 22-2. Instead, Garcia argues Chewy must do more than submit a signed copy of the Arbitration Agreement and a supporting affidavit to show assent. ECF 22 at 6–10. For example, relying on *Bazemore*, 827 F.3d 1325 and *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343 (11th Cir. 2025), cases involving "clickwrap" agreements,[5] Garcia argues Chewy must produce evidence showing the application platform or system used

[4] Garcia states he does "not recall the exact screen, prompt, checkbox, typed-name field, or workflow that Chewy's system presented to [him] during the June 7, 2023 internal application process," nor "whether the full text of the Dispute Resolution Agreement was displayed to [him] before [his] name was entered," nor "whether [he] could submit the application without completing the Dispute Resolution Agreement," nor "whether the delegation clause or any specific provision of the agreement was separately highlighted or explained." ECF 22-1 ¶ 5.

[5] In "clickwrap" agreements, users assent to terms "by clicking a button near a disclosure referencing those terms." *Lamonaco*, 141 F.4th at 1347.

for his employment application, the screen sequence presented during the execution of the Arbitration Agreement, the language of any prompt, checkbox, or acknowledgment field, whether the full six-page Arbitration Agreement was displayed or merely referenced, whether the application could be submitted without completing the Arbitration Agreement, and other technical forms of evidence concerning the execution of the Arbitration Agreement. ECF 22 at 6–8. But unlike the defendants in *Bazemore* and *Lamonaco*, Chewy has produced a signed copy of the Arbitration Agreement. ECF 16-2 at 7–12; *Bazemore*, 827 F.3d at 1332 (affirming denial of motion to compel arbitration where defendant produced no competent evidence that the contract was sent to the plaintiff and no copy of the actual contract seeking to be enforced); *Lamonaco*, 141 F.4th at 1348 (discussing sufficient evidence in the clickwrap context).

Here, the Arbitration Agreement contains Garcia's signature, the date and time of signature, and his IP Address. ECF 16-2 at 12. In addition, his signature follows the bold print statement:

> **By typing your name below, you are (a) acknowledging that you personally received and reviewed this Dispute Resolution Agreement; (b) accepting the terms and conditions of the Dispute Resolution Agreement, above; and (c) agreeing that your typed name is your electronic signature and to use an electronic signature to accept the Dispute Resolution Agreement. Your electronic signature is as legally binding as an ink signature.**

*Id.*

Garcia's signature alone is powerful evidence of assent. *See Emory Healthcare, Inc. v. van Engelen*, 362 Ga. App. 818, 821, 870 S.E.2d 223, 226 (2022) ("Suffice it to say, a contract is valid only if the parties assented to the contract terms, which is commonly indicated by signing the agreement." (citation modified)); *Century 21 Pinetree*

*Props., Inc. v. Cason*, 220 Ga. App. 355, 356, 469 S.E.2d 458, 460 (1996) ("Clearly, the *best* way for Century 21 to have indicated its assent to the terms of the written contract would have been to sign the document."); *see* O.C.G.A. § 10-12-7(a) ("A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form."). But Chewy also provides the affidavit of Jennifer Motz, the Senior Director of Talent Acquisition for Chewy, certifying that the copy of the Arbitration Agreement is true and correct. ECF 16-2 at 2–5. Motz states that Chewy implemented its arbitration program over time and that in June 2023, Garcia executed Chewy's mutual Arbitration Agreement as a condition of submitting his application for an internal job opportunity, which is consistent with the confirmation email produced by Garcia. *Id.* at 4; ECF 22-2 at 3. In sum, the undisputed facts demonstrate that Garcia assented to the Arbitration Agreement.

**B. The Delegation Clause**

Among the terms to which Garcia agreed when he signed the Arbitration Agreement is the following delegation clause:

> Additionally, except as this Agreement otherwise provides, the Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable.[6]

ECF 16-2 at 8. Because the Arbitration Agreement delegates the question of applicability to the Arbitrator, the Court will not consider whether Garcia's asserted claims fall within the scope of the Arbitration Agreement, "except as th[e] Agreement

[6] Garcia states that Chewy has not demonstrated compliance with the Arbitration Agreement's preconditions for invoking arbitration, but acknowledges that under the Arbitration Agreement, the "Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration." ECF 16-2 at 10; 22 at 11.

otherwise provides." *Id.*; *see Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1296 (11th Cir. 2022) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." (citation modified)). The Agreement states that the delegation clause does not apply to "Class Action Waiver and/or Collection Action waiver." ECF 16-2 at 8. But that exception is not applicable here. Because the parties "clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator," the Court "must respect the parties' decision as embodied in the contract." *Attix*, 35 F.4th at 1296 (citation modified).

## IV. CONCLUSION

Undisputed facts show the parties entered into an Arbitration Agreement and committed questions of the Agreement's applicability to an arbitrator. Chewy's motion to compel arbitration (ECF 16) is **GRANTED**. This case is **STAYED** "until such arbitration has been had in accordance with the terms of the [A]greement." 9 U.S.C. § 3.

**SO ORDERED**, this 11th day of September, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT